936 So.2d 667 (2006)
Chris P. TSOKOS; Hwy 301 South Property, LLC; Riverview South Trailer Park, LLC; and SR 672 Property, LLC, Petitioners,
v.
SUNSET COVE INVESTMENTS, INC., a Florida corporation, Respondent.
No. 2D06-1221.
District Court of Appeal of Florida, Second District.
July 14, 2006.
Richard K. Fueyo and Marie Tomassi of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, for Petitioners.
Matias Blanco, Jr., Tampa, for Respondent.
CASANUEVA, Judge.
Chris Tsokos and three companies of which he is the principalHwy 301 South Property, LLC; Riverview South Trailer Park, LLC; and SR 672 Property, LLC (hereinafter Tsokos)petition this court for a writ of prohibition quashing an order to show cause why they should not be held in indirect criminal contempt for their willful disobedience of and interference with the final judgment in a lawsuit to which they were not parties. Prohibition is an appropriate remedy to prevent judicial action "when a party is about to be cited for contempt on the basis of acts *668 which could not constitute contempt of court." State ex rel. Gillham v. Phillips, 193 So.2d 26, 29 (Fla. 2d DCA 1966). See also Eubanks v. Agner, 636 So.2d 596, 597 (Fla. 1st DCA 1994). In the present case, the final judgment did not proscribe the conduct that forms the basis of the order to show cause. We therefore grant the petition and order that no further proceedings be held on the order to show cause.
The underlying lawsuit began as an action by Sunset Cove to enforce the sale of commercial real estate. According to the complaint, in April 2004, Benny G. Santiago executed an "As Is" Sale and Purchase Contract in which he agreed to sell five parcels of property to Sunset Cove. Sunset Cove had problems obtaining financing to close according to the contract terms. On March 30, 2005, Sunset Cove and Santiago executed a mediated settlement agreement in which Santiago agreed to sell Sunset Cove four of the five parcels. Their agreement provided for closing of the sale within ninety days. The final judgment incorporated all provisions of the mediated settlement agreement and retained jurisdiction to enforce them. The final judgment was recorded on April 18, 2005, along with a renewed lis pendens.
On June 6, 2005, Tsokos sought to intervene in the Sunset Cove lawsuit on the basis that he had entered into land sale contracts with Santiago that were superior in priority to any claim memorialized by any settlement reached with Sunset Cove.[1] The circuit court denied the motion to intervene, finding that Tsokos's contracts were back-up contracts and that Tsokos could not intervene after the entry of the final judgment.
For reasons not pertinent here, the sale between Sunset Cove and Santiago did not close as scheduled in the mediated settlement agreement and final judgment. On September 27, 2005, three months after the scheduled closing date, Tsokos bought from Santiago the four parcels of property that were the subject of the final judgment. On November 21, 2005, Sunset Cove filed a verified motion for order of contempt against third parties.[2] The motion alleged that Tsokos and his corporations knowingly aided and abetted or assisted Santiago in violating the final judgment or were in privity with Santiago. In February 2006, the circuit court conducted a hearing on Sunset Cove's motion to determine whether it had authority to hold Tsokos in criminal contempt. The circuit court found it had such authority and issued the order to show cause, which stated that Tsokos had actual knowledge of the final judgment and of Sunset Cove's enforcement action. The court declared that it had jurisdiction to consider the indirect criminal contempt of Tsokos and his companies for their willful disobedience and interference with the final judgment.[3] Although the order to show cause is deficient *669 because it did not state the necessary facts to support a charge of criminal contempt,[4] it is clear from the record of the hearing that the order to show cause was based on Tsokos's purchase of the properties. Because the circuit court acted in excess of its jurisdiction, it is not necessary to address this deficiency.
It is well-established that "[o]ne may not be held in contempt of court for violation of an order or a provision of a judgment which is not clear and definite so as to make the party aware of its command and direction." And, "implied or inherent provisions of a final judgment cannot serve as a basis for an order of contempt."
Cooley v. Moody, 884 So.2d 143, 145 (Fla. 2d DCA 2004) (internal citations omitted). See also Keitel v. Keitel, 716 So.2d 842 (Fla. 4th DCA 1998) (holding that even though the former husband's visitation rights were implicitly obstructed by the former wife's relocation to New York, the final judgment did not contain an express provision prohibiting relocation and implied or inherent provisions of a final judgment cannot serve as the basis for an order of contempt). Here, as Tsokos argues in the petition, the final judgment did not expressly prohibit a third party from purchasing the property after the closing date incorporated into the final judgment.
In Osmo Tec SACV Co. v. Crane Environmental, Inc., 884 So.2d 324, 328 (Fla. 2d DCA 2004), this court reversed an order holding third parties in contempt on the ground that the injunction did not specifically prohibit the conduct for which the alleged contemnors were found in contempt. Crane Environmental had sued Andalite Industries, a company selling water filtration systems, and requested a temporary injunction to prevent violation of a noncompete agreement. The trial court entered a temporary injunction requiring that Andalite and its owners cease their water filtration business whether through its fictitious name of Haliant Technologies or through a third party. After the injunction issued, Osmo Tec purchased virtually all of Andalite's water filtration assets, including intangible property, capital equipment, and inventory. Id. at 325-26. Crane Environmental then moved to have Osmo Tec and its owner and manager held in contempt in its lawsuit against Andalite and its owners, even though Osmo Tec and its owner and manager were not parties. See id. at 326.
In its order of contempt, the circuit court specifically found Osmo Tec and its manager in contempt and implicitly found the owner of Osmo Tec in contempt for violating the injunction. See id. at 326 n.1. The circuit court found that, prior to purchasing Andalite's assets, Osmo Tec and its owner and manager had actual knowledge of the injunction enjoining Andalite from continuing operations. This finding was not in dispute. On appeal, Osmo Tec and its owner and manager argued that the injunction did not prohibit the sale of the Andalite's assets to a third party. This court agreed, concluding that the temporary injunction lacked a reasonably detailed description of the conduct for which the trial court held the Osmo Tec parties in contempt.[5]

*670 From a review of the transcript of the contempt hearing, it is apparent that the trial court's rationale for finding the appellants in contempt was its belief that the purpose of the injunction was to destroy the ongoing operations of a company that had grown as a result of violations of a valid noncompete agreement. However, that purpose was not reflected in the written order imposing the injunction. The temporary injunction specifically enjoined neither the sale of any asset of Andalite Industries nor the use of the name of Haliant Technologies by any third partiessuch as the appellantsin connection with a water filtration business.
Id. at 327.
In spite of their different procedural contexts, the rationale of Osmo Tec is applicable to this case. Here, the purpose of the final judgment was to ratify the mediated settlement agreement between Sunset Cove and Santiago. However, just as in Osmo Tec, in which the temporary injunction did not prohibit the sale of Andalite's assets, here the final judgment did not prohibit a third party from purchasing the real estate in question. Because the final judgment did not proscribe the conduct forming the basis of the order to show cause, we grant the petition and order that no further proceedings be held on the order to show cause.
Petition granted.
SALCINES and KELLY, JJ., Concur.
NOTES
[1] In the petition filed in this court, Tsokos alleges that he had entered into separate contracts for two of the real estate parcels before Sunset Cove and Santiago executed the mediated settlement agreement.
[2] In its response to the petition, Sunset Cove cites an order holding Santiago in civil contempt, which found that the sale to Tsokos took place while Sunset Cove's motion to enforce the final judgment was pending. According to the response, an order of contempt against Santiago was rendered just days before Sunset Cove filed its verified motion for order of contempt against third parties.
[3] The trial court's finding in the order to show cause that Tsokos had actual knowledge of Sunset Cove's motion to enforce the final judgment appears to be based on Sunset Cove's argument at the hearing on the motion for contempt. Sunset Cove maintained that it filed the motion to enforce the final judgment prior to Tsokos's motion to intervene in the underlying lawsuit.
[4] See Hagerman v. Hagerman, 751 So.2d 152 (Fla. 2d DCA 2000) (holding that an order to show cause was deficient when it merely stated that the defendant had violated a prior court order and did not include the facts that purportedly constituted the criminal contempt).
[5] Florida Rule of Civil Procedure 1.610(c) requires that every injunction "shall describe in reasonable detail the act or acts to be restrained."