EMAS, J.
In this consolidated appeal, Appellants/Judgment Creditors Hotel 71 Mezz Lender, LLC (“Hotel 71”) and Carbon Capital II (“Carbon Capital”) (together with Hotel 71, “Appellants”) seek review of two final summary judgments entered in favor of the Estate of James Wallace Tutt, III (“Tutt” or “the Estate,” as appropriate).[1] Both Hotel 71 and Carbon Capital had garnished Tutt and were targeting a real estate transaction in which Tutt received from Guy Mitchell approximately $2.9 million in exchange for a Bahamian Island known as Caribe Cay. A central issue of both actions was the status of the transaction; namely, whether the sale had been completed such that the proceeds held by Tutt were no longer subject to *1241 Hotel 71’s and Carbon Capital’s writs of garnishment. For the reasons that follow, we affirm the trial court’s entry of final summary judgment in favor of appellee as against each of the appellants.

FACTS

Hotel 71, a plaintiff/judgment creditor in the trial court, is a Delaware limited liability corporation located in New York. Guy Mitchell, a Coral Gables resident, and several other individuals are judgment debtors resulting from their default of personal guaranties of a loan that Hotel 71 made to an entity owned and controlled by several of the judgment debtors in order to acquire a Chicago hotel.
In April 2007, Hotel 71 sued Mitchell and the other judgment debtors in New York for breach of contract. A year later, the New York court entered summary judgment in favor of Hotel 71 in the amount of $52,404,066.54. The judgment subsequently was registered in Miami-Dade County. In November 2006, a second company, The Formula, Inc., sued Mitchell and others in Miami-Dade County, resulting in a stipulated judgment in favor of The Formula, Inc. for more than $4.2 million. Carbon Capital is the successor in interest to The Formula, Inc. and the current owner of that judgment.
In March 2006, prior to the foregoing lawsuits, Mitchell and J. Wallace Tutt, III negotiated for the sale of Caribe Cay, a one-acre Bahamian island owned by Tutt, for a net purchase price of $2.925 million. However, Tutt and Mitchell never entered into a written contract for that sale. According to Tutt, Mitchell began to occupy Caribe Cay as a renter in August 2006 pursuant to an oral contract. In February of 2007, based on rental payments made by Mitchell during his occupancy of Caribe Cay, Tutt and Mitchell agreed to reduce the purchase price to $1.8 million plus Tutt’s legal fees and other expenses incurred in connection with the sale of the island. By May 2008, Mitchell paid Tutt all but $7000 of Caribe Cay’s purchase price. Mitchell had taken possession of, and made improvements to, the property. Nonetheless, Mitchell allegedly did not want to take formal title to the property. As a result, the deed was never transferred from Tutt to Mitchell. Tutt subsequently learned that Mitchell intended for an entity named Punto Larga, Ltd. to be named as the purchaser of Caribe Cay. Mitchell testified at a subsequent deposition that he has no direct interest in Car-ibe Cay.

Hotel 71’s garnishment action

In August 2008, Tutt became aware of the New York judgment and that a receiver was appointed for Mitchell’s property. Hotel 71 then served and filed a writ of garnishment directed to Tutt, as part of an effort to identify and seize assets belonging to Mitchell. Tutt answered the writ, alleging that “at the time of service of the writ, [he] had no tangible or intangible personal property of any or all of the Judgment Debtors in [his] possession or control”; that he “sold property, located in the Bahamas ... to [Guy Mitchell]”; and that “said transaction is complete with the exception of a final U.S. Seven Thousand Dollar ($U.S. 7,000.00) payment which Mitchell owes to Tutt.” Hotel 71 served a new writ on Tutt in April 2009, and Tutt’s answer was similar to his prior answer with the exception that Tutt did not allege, as he had in his previous answer, that he sold the property to Mitchell.

Carbon Capital’s garnishment action

In October 2008, Carbon Capital also sought to enforce its judgment against Mitchell. It too filed a writ of garnishment in the circuit court, seeking a ruling that it had the right to step into Mitchell’s shoes so that Carbon Capital could exercise any rights that Mitchell had under the *1242 Caribe Cay purchase and sale agreement. Hotel 71 filed an affidavit in that action, notifying the Carbon Capital court of Hotel 71’s priority with respect to any assets of Mitchell garnished by Carbon Capital from Tutt and asking the court to determine the right of priority between Hotel 71 and Carbon Capital, even though Hotel 71 was not a party to the Carbon Capital action. Hotel 71 stipulated, at a December 2008 hearing, that the trial court’s ruling on the status of the transaction in the Carbon Capital case would be binding in the Hotel 71 case.

Proceedings in the Bahamas

Also in October 2008, Punto Larga filed suit against Tutt in the Bahamas, demanding specific performance of a purported agreement through which Tutt would sell Caribe Cay to Punto Larga; an order that Tutt do all acts and execute all documents necessary to effectuate the transfer of Caribe Cay to Punto Larga; and damages in lieu of specific performance. Tutt filed an affidavit in that action in support of an application to issue a third-party summons against Guy Mitchell, Hotel 71 and The Formula, Inc. (to which Carbon Capital became the successor in interest).

The trial court’s determination on Carbon Capital’s garnishment action

On September 29, 2009, Carbon Capital and Tutt appeared before the trial court for an evidentiary hearing on Carbon Capital’s garnishment of Tutt. Based on evidence proffered by Carbon Capital and Tutt, the trial court entered judgment on October 28, 2009, finding that Tutt sold Caribe Cay to Mitchell in 2006, and that although legal title had not yet been transferred, equitable title belonged to Mitchell. The trial court found Carbon Capital succeeded to the rights of Mitchell and that Mitchell’s rights under the Caribe Cay purchase agreement were subrogated to Carbon Capital. However, the trial court also determined that legal title to the property must be satisfied in the Bahamas, as the Bahamian court had jurisdiction over the property itself. Tutt allegedly endeavored to interplead Caribe Cay for the Bahamian court to adjudicate legal title, and upon accomplishing the inter-pleader, Tutt would be discharged from any liabilities to Carbon Capital, Mitchell, or Mitchell’s designees arising from Carbon Capital’s writ. The trial court also reserved jurisdiction to determine the priority of the competing garnishment claims of Carbon Capital and Hotel 71. Carbon Capital did not appeal this judgment.[2]

Summary judgment on Hotel 71’s garnishment action

On October 7, 2009, prior to entry of Carbon Capital’s garnishment judgment, Hotel 71 moved for summary judgment in its garnishment action against Tutt. The trial court denied the motion, but granted summary judgment to Tutt, even though he had not filed a motion seeking that relief. On appeal, this Court reversed for purely procedural reasons.[3] Hotel 71 *1243 Mezz Lender LLC v. Tutt, 66 So.3d 1051 (Fla. 3d DCA 2011). The Estate filed a motion for summary judgment on remand, which Hotel 71 opposed.[4] On January 17, 2012, the trial court granted the Estate’s motion and again entered final judgment against Hotel 71. The court held it was clear “that the sale of Caribe Cay by J. Wallace Tutt, III to Guy Mitchell was completed, save only Mitchell’s failure or refusal to designate the name wished reflected on the deed of conveyance. The undisputed record establishes that Mitchell took possession, made improvements, and made nearly full payment of the purchase price. Therefore, although bare legal title remains in the name of the Estate, equitable title passed to Mitchell by no later than 2007.” It is this summary final judgment from which Hotel 71 appeals.

Carbon Capital’s second action

In November 2010, Carbon Capital sued the Estate for specific performance, unjust enrichment and breach of contract, alleging in the complaint that Tutt and Mitchell reached an oral agreement for the purchase and sale of Caribe Cay and executed a term sheet. Carbon Capital sought relief in the form of an order compelling the Estate to specifically perform the Caribe Cay purchase agreement and to have the Estate convey title to Carbon Capital. Alternatively, Carbon Capital alleged that Tutt was unjustly enriched by receipt of the Mitchell money for Caribe Cay while still holding title to the property. Carbon Capital’s final allegation was that the Estate breached the contract with Mitchell by failing to convey legal title to Carbon Capital, despite Carbon Capital’s demand.

Summary judgment on Carbon Capital’s second action

The Estate moved for summary judgment against Carbon Capital. With regard to Count I, it argued (i) the one-year statute of limitations barred Carbon Capital’s specific performance claim because of the prior determination that Punto Larga was related to Mitchell, and Punto Larga had instituted a specific performance action in the Bahamas more than a year prior to Carbon Capital’s current lawsuit against Tutt/the Estate; (ii) Carbon Capital split its causes of action by seeking the same relief simultaneously in separate fora, (iii) Carbon Capital failed to join Pun-to Larga as an indispensable party, and (iv) Carbon Capital was bound by the determination that equitable title had passed to Mitchell. As to the unjust enrichment claim, the Estate argued that by receiving equitable title to, and taking physical possession of the property, Mitchell received substantial value from Tutt/the Estate, and therefore the Estate was not unjustly enriched by the proceeds of the sale. Further, because Carbon Capital was a party to the proceedings which resulted in the Carbon Capital final judgment, it was es-topped from disputing the determination that equitable titled had passed to Mitchell. Finally, on the breach of contract claim, the Estate argued that Carbon Capital, by standing in Mitchell’s shoes, was subject to all the defenses Mitchell could have raised; thus, because the October 2009 judgment determined that Mitchell prevented Tutt from conveying legal title to Caribe Cay, Carbon Capital was subject to the absolute defense that Mitchell’s breach exonerated Tutt/the Estate. The Estate also argued the trial court lacked *1244 subject matter jurisdiction to determine the specific performance and breach of contract counts because the issue of legal title must be resolved in the Bahamas.
The trial court initially denied the Estate’s motion for summary judgment. Several weeks later, however, the trial court, sua sponte, vacated the order denying summary judgment and granted summary judgment against Carbon Capital and dismissed all counts of its complaint. As to Count I, the court found it did not have jurisdiction to order specific performance, even if Carbon Capital was entitled to relief. Further, Punto Larga and possibly Hotel 71 may be indispensable parties, and these matters should be determined in the Bahamas. With regard to Count II, the Estate was not found to be unjustly enriched because Tutt turned over physical possession of Caribe Cay to Mitchell, and Mitchell took possession and made improvements to the property. Equitable title was therefore conveyed. Finally with regard to Count III, the trial court determined that the Estate did not breach a contract and instead only failed to turn over legal title as a result of Mitchell’s failure to designate the name he wished reflected on the deed of conveyance. It is this final summary judgment from which Carbon Capital appeals.
Hotel 71 and Carbon Capital have each appealed their adverse final summary judgment. We review de novo the trial court’s entry of final summary judgment. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000).

ANALYSIS

While the underlying facts and procedural history of this case are self-evidently complex and convoluted, resolution of the issues on appeal is decidedly less so.
I. Whether summary judgment against either appellant is premature
Appellants contend that both the Hotel 71 and the Carbon Capital summary judgments are flawed because they are premature as based on an uncompleted oral real estate transaction. Thus, they argue, until the issue of ownership of Caribe Cay is completely resolved by a Bahamian Court of competent authority, the rights of Mitchell’s judgment creditors cannot be summarily foreclosed. We do not agree. Punto Larga’s specific performance action is presently pending in the Bahamas.[5] The determination of ownership of Caribe Cay will be resolved in this action and will determine whether Punto Larga, Hotel 71 or Carbon Capital is the rightful owner of the property. Upon such a determination, the Estate can deliver legal title to the appropriate party in the Bahamas, after which there will be no reason to return to Florida for further litigation.
II. Summary Judgment against Carbon Capital
Appellants further maintain that the trial court has jurisdiction over the Estate and could order specific performance of the contract based on the fact that “an action for specific performance on a contract for the sale of land is an in per-sonam suit and may be maintained outside of the county where the property at stake lies.” Hammond v. DSY Developers, LLC, 951 So.2d 985, 989 (Fla. 3d DCA 2007). While this may be true, we need *1245 not reach the issue, as the Estate properly established, and the trial court properly found, summary judgment was appropriate for Carbon Capital’s failure to join an indispensable party. Punto Larga is an indispensable party to any action in Florida, and Carbon Capital’s failure to join that entity carries the potential for inconsistent results. “An indispensable party is one whose legal or beneficial interest in the subject matter makes it impossible to completely adjudicate the matter without affecting that party’s interest.” Santiago v. Sunset Cove Investments, Inc., 988 So.2d 10, 14 (Fla. 2d DCA 2008). Here, Punto Larga is an entity related to Mitchell and is a competing claimant to Caribe Cay. Failure to have Punto Larga, Carbon Capital and Hotel 71 subject to a court’s jurisdiction in a single proceeding creates a potential for inconsistent outcomes. If Carbon Capital continues to pursue the Florida claim while a specific performance action is being pursued by Punto Larga in the Bahamas, there is a genuine risk that the Estate could be subject to competing, conflicting orders from the two jurisdictions, requiring the Estate to deliver title to two different entities. Because the interests of all these parties will be affected by the court’s determinations, they are each an indispensable party.[6] Id.
III. Summary Judgment against Hotel 71
Hotel 71 argues summary judgment is improper because the oral contract between Tutt and Mitchell violated the statute of frauds. However, in the Carbon Capital garnishment matter, Judge Friedman determined that equitable title of Caribe Cay had passed to Mitchell, and that the only remaining issue was identifying which party was entitled to legal title. Hotel 71 is estopped from disputing the rulings made by Judge Friedman because, even though it was not a party to that action, Hotel 71 expressly stipulated that it would be bound by the rulings in that case.[7] Thus, it cannot relitigate the status of the Tutt/Mitchell transaction. Though Hotel 71 did not actually intervene in that action, a non-party cannot sit on its rights while proceedings that will affect it move forward. In Sutton Enterprises, Ltd. v. Santa Clara Construction Co., 767 So.2d 547 (Fla. 3d DCA 2000), this Court held:
A person [or business entity] has no right to shut his eyes or ears to information, and then say that he has no notice. The law will not permit him to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand. If he has either actual or constructive information and notice sufficient to put him on inquiry, he is bound, for his own protection, to make that inquiry which such information or notice appears to direct should be made. If he disregards that information or notice which is sufficient to put him on inquiry and fails to inquire and to learn that which he might reasonably be expected to learn upon making such inqui *1246 ry, then he must suffer the consequence of his neglect.
Id. at 549.
Hotel 71, an entity with a substantial interest in the issues being litigated in the Carbon Capital garnishment — which was competing with Carbon Capital’s efforts to garnish the proceeds of the sale of Caribe Cay — cannot disavow its own agreement to be bound by the ruling in that case. Accordingly, Hotel 71 is estopped from relit-igating the issue of whether the Tutt/Mitchell transaction was an unenforceable oral contract; the only remaining issue is who is entitled to legal title of Caribe Cay.
Similarly, the enforceability of the agreement and the statute of frauds arguments are no longer issues, because Judge Friedman’s determination that equitable title had passed to Mitchell necessarily embodies the findings that an agreement was made for the sale of Caribe Cay, and that the agreement was performed by Mitchell and Tutt. Because this determination had already been made, the enforceability issue raised by Hotel 71 in opposition to summary judgment was moot.[8]
We find the other issues raised by appellants to be without merit.
Affirmed.

. James Wallace Tutt, III passed away in 2010, during the pendency of the proceedings below and the Estate thereafter became the party in interest, thus necessitating the varying reference to appellee throughout the opinion as "Tutt” or "the Estate.”

. As will be seen infra, instead of appealing this judgment or pursuing legal title by instituting an action in the Bahamas, Carbon Capital filed a second action in circuit court.

. This Court reversed the entry of summary judgment because Tutt had not moved for summary judgment and Hotel 71 was not provided notice as required by Florida Rule of Civil Procedure 1.510(c). Tutt, 66 So.3d at 1054. The majority did not reach the merits of the case. Judge Schwartz dissented, writing that "the trial judge was substantively correct in concluding that, beyond the 'slightest doubt’, the appellees were entitled to summary judgment as a matter of law and that the judgment below was procedurally authorized under the line of cases which permits summary judgment for the non-moving party.” Id. (Schwartz, J., dissenting) (citations omitted). While Judge Schwartz's conclusion on the merits may have been premature, it ultimately has proven correct.

. It is undisputed, however, that Hotel 71 submitted no additional evidence in opposition to this second motion for summary judgment, and the factual record for the second motion for summary judgment had not materially changed from the record considered on the first motion for summary judgment.

. Though not necessary to our decision, it has been asserted in this appeal that, in addition to the Punto Larga suit, the Estate sought to interplead the Caribe Cay property in the Supreme Court of the Bahamas, naming Pun-to Larga, Hotel 71 and Carbon Capital as interpleader defendants. The record, however, does not indicate the history or status of any such interpleader action.

. Though Appellants contend that Punto Lar-ga simply has a claim of interest or connection to the property at issue (rather than a legal or beneficial interest) and that, as such, it is not an indispensable party, it cites no case law for this proposition and fails to take into account the fact that the Carbon Capital final judgment holds that Punto Larga and Mitchell — the other party to the transaction with Tutt — are related.

. Further, Hotel 71 participated in joint discovery in that action, including scheduling a mutually convenient date with Tutt and Carbon Capital for Tutt’s deposition, and filing an affidavit, pursuant to section 77.16(1), Florida Statutes (2009), claiming an interest in the funds received by Tutt from Mitchell.

. Moreover, Hotel 71 was not a party or an intended beneficiary to the Tutt/Mitchell transaction, and thus did not have standing to raise the statute of frauds or contest enforceability of the agreement. Jones v. Howland, 369 So.2d 438 (Fla. 3d DCA 1979); Young v. Pottinger, 340 So.2d 518 (Fla. 2d DCA 1976); Bochese v. Town of Ponce Inlet, 405 F.3d 964 (11th Cir.2005) (Fla. law).